OPINION
Ronald Price has appealed pro se from a civil protection order (CPO) entered against him in favor of Joni Dyke, and from an order denying his motion to vacate the judgment overruling his objections to the civil protection order, previously entered by the court's magistrate, and adopting same.
Price's appellate brief does not address the adverse ruling on his motion to vacate, nor did he raise the issue at oral argument, and appellate review of that ruling is thereby waived.
Price advances two assignments of error on appeal which are interrelated and argued together. We will accord them like consideration.
 1. THE TRIAL COURT ERRED BY ENTERING AND ENFORCING ORDERS AND A JUDGMENT AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED.
 2. THE TRIAL COURT ERRED BY ENTERING AND ENFORCING A JUDGMENT THAT RESULTED IN A MANIFEST INJUSTICE TO APPELLANT.
 The court entered an ex parte CPO December 14, 1998, pursuant to Dyke's petition for same filed the same date.
The matter came on for full hearing February 23, 1999, before the magistrate who, after hearing testimony from Dyke and Price, entered a "Domestic Violence Full Hearing CPO."
 1.
Price contends on appeal that he didn't understand that he was expected to present his full defense on February 23, and that he has thus been denied the opportunity to do so. He claims that the court led him to believe that the February 23 hearing was only an "initial hearing." This contention rings hollow for a number of reasons. The second page of theex parte order, which was served personally upon Price, contained a prominent "NOTICE TO RESPONDENT: SEE THE . . . NOTICE OF FULL HEARING BELOW." On the third page, there was a prominent notice of the place, date, and time of "A FULL HEARING." Price obtained a first continuance of the full hearing through counsel whom he later fired. On February 3, 1999, Price moved pro se for another continuance, stating in part as follows:
 Respondent also found out at the same time of a hearing scheduled for February 4, 1999. Therefore, subpoenas for witnesses, preparation of a motion to dismiss, and otherwise preparing for said hearing is impossible. Granting this motion will not prejudice the Petitioner in any way because the order that is in effect will continue, but denying this motion would create a severe hardship and be prejudicial to the Respondent.
On February 23, Price appeared pro se, and the magistrate informed Price that he would continue the hearing to allow Price to obtain counsel, but that the matter would proceed as scheduled if Price elected to represent himself. Price chose to go forward pro se, and Dyke presented her direct testimony. Prior to Dyke taking the stand, Price did not tell the magistrate he was unprepared for a full hearing, and the magistrate atno time suggested to Price that the hearing was anything less than a full hearing. It was only after he began to cross examine Dyke that Price told the magistrate that he "didn't know that there was going to be a chance to use witnesses here." The magistrate told Price, in effect, that he should have been aware of the significance of the hearing, and Price proceeded with his cross-examination of Dyke, not seeking a continuance. In his objections to the magistrate's granting the Domestic Violence Full Hearing CPO, Price did not contend that he had been misled as to the significance of the full hearing on February 23.
On balance, Price was aware that the February 23 hearing was a "full hearing," his pro se motion for continuance, quoted above, revealed his awareness of the need to secure witnesses, and the court in no way misled him as to the significance of the February 23 hearing.
 2.
Price next contends that the magistrate should not have credited the testimony of Dyke. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175.
Dyke narrated a version of events, supported by photographic evidence, that established the elements of domestic violence as defined at R.C.2919.25(A). Based on the above authorities, we find no basis in the transcript of the February 23 hearing to reverse the trial court's judgment. The fact that Price may have prevailed in a domestic violence case and a replevin case, both involving Dyke, in the Vandalia Municipal Court, when we have no more before us than Price's word that such was the case, provides no basis for our reversing the judgment on appeal.
 3.
Price next contends that the judgment on appeal is the result of a personality clash between the magistrate and himself. There is no record support for this contention.
 4.
Next, Price contends that the magistrate "could not or did not care to get the facts straight" and the court "simply made excuses." Price does not elaborate as to these contentions. Having reviewed the hearing transcript, we are well satisfied that the magistrate's narration of the facts is consistent with a permissible view of the testimony.
 5.
Price's appellate brief and oral argument did not assert one of the issues he advanced in his objections to the CPO entered after the February 23 hearing: that Dyke was not "a person living as a spouse" so as to be a "family or household member" within the purview of R.C.2919.25(A). See also R.C. 2919.25(E)(1)(a)(iii), (2). In the interest of thorough appellate review, we briefly address this issue.
Because the General Assembly believed that an assault involving a family or household member deserved further protection than an assault on a stranger, "the offense of domestic violence, as expressed in R.C.2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances." State v.Williams, 79 Ohio St.3d 459, 463-464. Cohabitation is the central element of the R.C. 2919.25(E)(2) definition of a person living as one's spouse. The supreme court has held that the essential elements of cohabitation are the sharing of familial or financial responsibilities and consortium. Id., paragraph two of the syllabus.
Possible factors establishing shared familial or financial responsibilities include provisions for shelter, food, clothing, utilities, and commingled assets. Williams, 79 Ohio St.3d at 465. These factors are unique to each case, and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact. Id. The burden of establishing cohabitation is not substantial. State v. Young (Nov. 20, 1998), Montgomery App. No. 16985, unreported. In determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(E)(2), "courts should be guided by common sense and ordinary human experience." Id.
It is readily inferable from the testimony of both parties that they had a sexual relationship from early June through late November, 1998, thus satisfying the "consortium" prong of "cohabitation." Although the evidence of shared familial or financial responsibilities is not overwhelming, it satisfies the "not substantial burden" of establishing the "shared responsibilities" prong of "cohabitation." Young, supra.
According to Dyke, Price afforded her shelter all but nine nights of their approximately five-month relationship, and she was in the process of selling her house in Troy. Dyke purchased food and plumbing parts for Price's home and had cable installed at Price's home in her name at his request. Dyke also used Price's address for certain purposes associated with her employment. Dyke brought certain items useful to both parties into Price's home. Although Dyke's testimony was refuted in part by Price, the magistrate and court were entitled to credit her testimony over Price's as to these matters as well as Dyke's testimony that Price caused her physical harm by biting her on the chin.
In sum, we find that Price's assignments of error lack merit. We will affirm the judgment appealed from.
BROGAN, J. and YOUNG, J., concur.